<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

STEPHEN PITTMAN,                          :
      CHRISTINE PITTMAN, and       :
      ANTHONY SILVA,               :      Civil Action No. 03-6177
                                  :
           Plaintiffs,              :        **OPINION**
                                  :
      v.                               :
                                    :
WISDOM INDUSTRIES, LTD., and              :
      FORSYTHE and DOWIS RIDES, INC., :
                                  :
           Defendants.              :

**Appearances:**

      Rosemary Pinto, Esquire
      Feldman & Pinto
      1604 Locust Street, 2R
      Philadelphia, PA 19103
           Attorney for Plaintiffs

      Nicholas S. Harnik, Esquire
      Martin R. McGowan, Esquire
      Methfessel & Werbel, Esquires
      3 Ethel Road, Suite 300
      P.O. Box 3012
      Edison, NJ 08818
           Attorneys for Defendants

**RODRIGUEZ, SENIOR DISTRICT JUDGE:**

      This matter comes before the Court on Defendants' Motion in Limine and Summary

Judgment [22].  For the reasons stated herein, Defendants' motion will be granted in part, denied

in part and dismissed in part.  Defendants' motion in limine to argue Plaintiffs' negligence to the

jury as it relates to proximate causation will be granted.  Defendants' motion will be denied in all

1

other respects, except that Defendants' motion to dismiss Plaintiffs' negligence and breach of warranty claims will be dismissed as moot.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiffs Stephen Pittman and Anthony Silva were maintenance workers (Def. Br., Exh. I, p. 7), for Morey's Piers, (Cmpl. ¶¶ 8,9).  On or about November 8, 2002, the two, along with two of their co-workers, were assigned the task of winterizing a ride called "Moby Dick". (Cmpl. ¶ 10.)  Although they could not find instructions for winterizing the ride, they proceeded to tear down the ride, following the assembly instructions in reverse.  (Def. Br., Exh. I., p. 6.) This procedure included using a brake to hold the passenger seat while a counterweight was removed; however, the brake failed to hold and the passenger seat fell on Plaintiffs Pittman and Silva.  (Def. Br., Exh. I, p. 6.)  As a result of their injuries, the Plaintiffs commenced the instant action.

## DISCUSSION

### A.  Comparative Negligence

Defendants contend that they should be able to argue comparative negligence as a defense to Plaintiffs' products liability claims.  In the alternative, Defendants contend that they should be able to argue that as a result of the Plaintiffs' negligence, their defective product was not the proximate cause of Plaintiffs' injuries.  Plaintiffs argue that the rule prohibiting the comparative negligence defense in work-related strict liability actions should apply and that the Plaintiffs' negligence does not pose a proximate cause question because there is no evidence that the Plaintiffs would not have heeded proper warnings or instructions.

2

**1. Comparative Negligence as a Defense**

Defendants argue that they should be able to present evidence of Plaintiffs' negligence to the jury and that the jury should be able to consider this evidence in apportioning damages for Plaintiffs' strict liability claims.  The Plaintiffs argue that the comparative negligence defense is unavailable because their injuries occurred in the workplace and they had no meaningful choice.

In general, when a plaintiff has actual knowledge of the danger presented by a defective product and she knowingly and voluntarily encounters that risk, the jury should be charged regarding the comparative negligence defense.  Suter v. San Angelo Foundry & Mach. Co., 406 A.2d 140, 148 (1978).  However, that conduct "cannot serve as a basis for a contributory negligence defense when an employee is injured in an industrial setting while using a defective product supplied by the employer for its intended or foreseeable purposes," because the employee has no meaningful choice.  Id.  The New Jersey Supreme Court reasoned that "an industrial employee has no choice but to use the product to complete his or her assigned task[; therefore,] 'the law does not accept the employee's ability to take care of himself as an adequate safeguard' of the interests society seeks to protect."  Johansen v. Makita U.S.A., Inc., 607 A.2d 637, 642 (N.J. 1992) (citing Suter, 406 A.2d at 148) (holding that "an employee engaged at his assigned task on a plant machine . . . has no meaningful choice . . . [and] as a matter of policy . . . is not guilty of contributory negligence") (emphasis added)).

Moreover, the Appellate Division of the Supreme Court of New Jersey has continually broadened the scope of the Suter holding.  Cavanaugh v. Skil Corp., 751 A.2d 564, 593 (N.J. Super. App. Div. 1999) (citing Grier v. Cochran Western Corp., 705 A.2d 1262, 1268 (N.J. Super. App. Div. 1998) (it is well established that "a plaintiff who sustains an injury from a

3

defective product in a work setting will not have his or her recovery diminished under comparative negligence principles for having allegedly encountered a known risk"); Congiusti v. Ingersoll-Rand Co., 703 A.2d 340, 344 (N.J. Super. App. Div. 1997) ("[t]here is no question that the comparative negligence of a plaintiff is generally disregarded in a workplace setting"); Fabian v. Minster Mach. Co., Inc., 409 A.2d 487, 496 (N.J. Super. App. Div. 1992) (comparative negligence not applicable where employee is injured at "workplace task"); Tirrell v. Navistar Intern., Inc., 591 A.2d 643, 648-49 (N.J. Super. App. Div. 1991) (rejecting the notion that the employee exception to the comparative negligence defense is limited to "an employee engaged at his assigned task on a plant machine").

Defendants argue that the Plaintiffs had meaningful choice in the completion of their job task because they: (1) did not wait for word back from a superior; and (2) did not follow the instructions in the manual.  (Def. Br., p. 24.)  As an initial matter, the Court rejects Defendants' contention that the Plaintiffs' meaningful choice is evidenced by the fact that they did not wait to hear back from their superior before proceeding because that argument does not find support in the record.  (Def. Br., p. 24.)  According to Pittman's deposition, the team of four mechanics consulted with their supervisor, Mr. Gannon ("Gannon"), for information on how to properly winterize the machine and were told that he would call Wisdom and that Plaintiffs should "finish what you're doing."  (Pl. Opp., Exh. A, p. 67:18-24); see also (Def. Br., p. 6) (stating that "Gannon instructed the Plaintiffs to continue dismantling the ride and informed them that he would get back to them (sic)").

Moreover, the Court cannot accept Defendants' argument that the line of cases from the New Jersey courts are distinguishable from this case.  The Plaintiffs' failure to warn claim

4

alleges that had there been proper warnings on the Moby Dick, they would not have been injured by the falling seat.  In <u>Bexiga</u>, the Supreme Court of New Jersey held that the defense of contributory negligence was unavailable, reasoning that "the asserted negligence . . . was the very eventuality the safety devices were designed to guard against.  It would be anomalous to hold that defendant has a duty to install safety devices but a breach of that duty results in no liability for the very injury the duty was meant to protect against." <u>Bexiga v. Havir Mfg. Corp.</u>, 290 A.2d 281, 286 (N.J. 1972); <u>see also</u> <u>Crumb v. Black & Decker</u>, 499 A.2d 530, 533 (N.J. Super. App. Div. 1985) (finding that the plaintiff was not contributorily negligent because the guard "was designed to protect against the precise inadvertent motion that resulted in plaintiff's accident"). Similarly, here, the Defendants' failure to warn that the passenger seat might fall was the very eventuality that led to Plaintiffs' injury.

Finally, the Defendants' argument that the contributory negligence defense is available because Plaintiffs here "are utterly unlike the typical individual injured in an industrial accident, choices and options for them abounded" is misplaced.  (Def. Br., p. 24.)  In <u>Crumb</u>, the Appellate Division described the meaningful choice inquiry as one where the employee "either work[s] at his assigned task or [is] subject to discipline or being labeled (sic) as a troublemaker."  499 A.2d at 533.  The Court disagrees with Defendants that the meaningful choice inquiry relates to the "how to" of the job task assigned; rather, the meaningful choice inquiry relates to whether or not the employee has a choice in performing the actual job task assigned.  If the Plaintiff cannot refuse to perform the assigned task without being subject to disciple or being labeled a troublemaker, then there is no meaningful choice.  Here, Defendants concede that Plaintiffs were performing their job duties.  (Def. Br., p. 24.)  Moreover, as discussed above, the Plaintiffs were

directed by their superior to continue performing their assigned task.  It is reasonable to assume that had Plaintiffs refused this order, they would have been subject to disciplinary action.  Therefore, the Court is satisfied that the Plaintiffs had no meaningful choice in the completion of their job task.  Accordingly, Defendants' motion in limine to recognize the viability of the comparative negligence defense will be denied.

### 2.  Comparative Negligence as a Defense to Proximate Cause

Defendants argue that, even if they are not entitled to present the contributory negligence defense, they should be able to argue that Plaintiffs' negligence was the proximate cause of their injuries.  Plaintiffs argue that the Supreme Court has rejected such an approach, and instead adopted a heeding presumption.

A plaintiff in a failure to warn claim is entitled to a "presumption that he or she would have followed an adequate warning had one been provided."  Coffman v. Keene Corp., 628 A.2d 710, 720 (N.J. 1993).  However, a defendant manufacturer may rebut the presumption by presenting evidence that the plaintiff had "knowledge of a product's inherent danger or risk."  Id. (citing Campos v. Firestone Tire & Rubber Co., 485 A.2d 305, 311 (N.J. 1984)).  Therefore, a manufacturer's "'duty to warn is not automatically extinguished because the injured user or consumer perceived the danger that preexisting knowledge, might negate a claim that the absence of a warning was a cause in fact of plaintiff's injury.'"  Id. (quoting Campos, 485 A.2d at 311) (citing Wundrack v. Armstrong World Industs., Inc., Civ. A. No. 89-1912, 1991 WL 172956 (May 28, 1991 D.N.J.) ("If a defendant can show that the injured person was aware of the dangers associated with the product such evidence would tend to rebut the presumption used by the court"); Vallillo v. Muskin Corp., 514 A.2d 528 (N.J. Super. App. Div. 1986) (finding that

6

plaintiff, based on his own testimony, was aware of the dangers of diving in a certain type of pool

and thus, the adequacy of defendant's warning was irrelevant); Technical Chemical Co. v.

Jacobs, 480 S.W.2d 602, 606 (Tex. 1972) (observing that defendants may prevail, one may

assume, if they produce credible evidence that "the user was blind, illiterate, intoxicated at the

time of the use, irresponsible or lax in judgment or by some other circumstance tending to show

that the improper use [of the product] would have been made regardless of the warning");

Menard v. Newhall, 373 A.2d 505, 506-07 (Vt. 1977) (stating that if enough rebutting evidence

is admitted, the presumption disappears and goes for naught)).

  Here, Defendants submit that they should be able to argue that Plaintiffs' negligence was

the sole proximate cause of the injuries because "[h]ad Plaintiffs followed the instructions for

dismantling the ride, as outlined in the manual, the accident would have been avoided."  (Def.

Br., p. 29.)  Plaintiffs argue that their conduct is not at issue; rather, because there is no evidence

that they would have disregarded a warning had it been offered, "there is no evidence that would

tend to demonstrate that the Plaintiffs' (sic) conduct . . . was the cause in fact of the resultant

injury."  (Pl. Opp., p. 11.)

  Plaintiffs' absolute reliance on the heeding presumption is misguided.  Although it is true

that there is a heeding presumption, the Defendants may be able to present evidence of Plaintiffs'

negligence as a potential cause of the injury if certain conditions are satisfied.  In Fabian, the

Appellate Division of the Superior Court of New Jersey held that although there is a presumption

that a missing warning would have been followed, "defendant must come forward with some

indication that the sign would not have been heeded."  609 A.2d at 496 (citing Campos, 485 A.2d

at 305).  There, the defendant "elicit[ed] evidence of plaintiff's sparse training, his conduct and

his subjective knowledge of the [product's] danger." Id.  The court reasoned that "[p]reexisting

knowledge of danger, if subjectively recalled at the very moment of the accident, can negate a

claim that absence of a warning was a proximate cause of the injury." Id. at 497.

In Johansen, the Supreme Court of New Jersey found that the trial court did not err in

allowing evidence of the plaintiff's negligence to be presented to the jury for consideration on the

issue of proximate causation.  607 A.2d at 644.  There, the plaintiff's hand was drawn into the

path of a power miter saw that he was using to cut a few inches off the end of a two-by-four. Id.

at 639.  Although the saw was sold originally with a guard, it had been removed prior to the

accident. Id.  The accident occurred because the plaintiff failed to prop up the unsupported end

of the board that he was cutting. Id.  The defendants presented evidence that the "plaintiff could

have avoided the accident by using 'common sense' and propping up the unsupported end of the

board, thereby eliminating the need to place his hand so close to the blade." Id. at 640.  The

plaintiff objected to the introduction of the evidence. Id. at 643.  In rejecting the plaintiff's

argument, the court stated that while the jury could not consider plaintiff's failure to support the

board as evidence of contributory negligence or in addressing the issue of product defect, it was

"relevant to the issue of proximate cause."[1] Id. at 644.

Here, the parties contest the issue of causation.  The Defendants have come forward with

some evidence that a warning sign, if given, would not have been heeded.  Plaintiff Pittman, in

his deposition, testified that had the instructions for dismantling the ride been followed, the setup

ram would have been a backup for the hydraulic brake.  (Pl. Opp., Exh. A, p. 66-67.)  In addition,

---

[1]The court further noted that a "cautionary instruction accompanying the admission of
that evidence would have been appropriate. Johansen, 607 A.2d at 644.

Plaintiff Pittman testified that the instructions were available at the time that he and Plaintiff Silva were tearing down the ride and that they reviewed them before beginning.  (Pl. Opp., Exh. A, p. 58-59.)   Moreover, like the defendants in <u>Johansen</u>, Defendants here argue that had Plaintiffs exercised "common sense" they would have referred to the manual for instructions on tear down and followed them in completing the task.  (Def. Br., p. 28-29.)  Therefore, the Court finds that Defendants may present the issue of Plaintiffs' negligence for consideration by the jury in determining the proximate cause of the accident.[2]  Accordingly, Defendants' motion in limine in this regard will be granted.

**B. Negligence and Breach of Warranty Claims (Counts I and III)**

Defendants argue that Plaintiffs' negligence (Count I) and breach of contract (Count III)

---

[2]The Court recognizes that it will be necessary to give the jury a cautionary instruction. For the record, the Model Jury Charges include the following:

> You have heard evidence about how the Plaintiffs were using the product.  When you are deciding whether the product was defective, you are not permitted to consider the Plaintiffs' conduct.
>
> If you find the product was defective, then you must decide whether the defect was a proximate cause of the accident.  At this point, you may consider the Plaintiffs' conduct.  If you decide that the product defect was the <u>only</u> cause of the accident, then you must find that the defect proximately caused the accident.
>
> If you decide that the product defect was a partial or contributory cause, then you must also find that the product defect was a proximate cause of the accident, even if the Plaintiffs' conduct was also a partial or contributory cause.
>
> On the other hand, if you decide that the Plaintiffs' conduct was the <u>only</u> cause, then you must find that the product defect was not a proximate cause of the accident.

New Jersey Model Jury Charges 5.34(G)(2) (April 1995).

claims should be dismissed because they are subsumed by Plaintiffs' products liability claims. Plaintiffs have voluntarily withdrawn Counts I and III of the Complaint pursuant to an Order signed by Magistrate Judge Rosen dated October 26, 2005.  Therefore, Defendants' motion for summary judgment on these counts will be dismissed as moot.

## C.  Intended User

Defendants argue that summary judgment against Plaintiffs' failure to warn claim should be granted because Defendants do not owe them any duty to warn since they are not the intended users of the product.  Plaintiffs argue that they are intended users of the product based on the statements of Defendants' expert and the president of Defendant Wisdom Industries.

### 1.  Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, a court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id.  In determining whether a genuine issue of material fact

exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradicts those offered by the moving party.  Anderson, 477 U.S. at 256-57.  "A non-moving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'"  Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

11

### 2. Analysis

The New Jersey Products Liability Act states, in pertinent part, that:

> An adequate warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into amount the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used.

N.J. Stat. Ann. § 2A:58C-4 (2000). Therefore, as part of a plaintiff's case-in-chief, she must prove that she "was a direct or reasonably foreseeable user, or a person who might reasonably be expected to come in contact with the [product]." N.J. Model Civil Jury Charges 5.34B.

Defendants argue that Plaintiffs cannot recover under a failure to warn theory because they are not the intended users of the amusement park ride; rather, the Defendants urge this Court to conclude that the ride is only intended to be disassembled by "trained professionals." (Def. Br., p. 34.) Defendants reason that "the evidence in this case clearly demonstrates that not simply anyone can get a job as a maintenance worker on amusement park rides. The worker must have specific knowledge and training as to that particular field." (Def. Br., p. 34-35.)[3] The Defendants provide no citation to this clear evidence in their brief.

Plaintiffs argue that they are within the class of intended users. First, Plaintiffs contend that Kenneth Garside, Defendants' expert, admitted they were the intended users because he,

---

[3]In support of this theory, Defendants cite the deposition testimony of Plaintiff's former employees, which states that "a knowledgeable and trained employee would have consulted the manual and followed the directions for dismantling the ride." (Def. Br., p. 35.) Defendants further opine that "it is equally unforeseeable that an employee assigned to the task of tearing down a complicated piece of machinery, would simply ignore the manual provided by Defendant and attempt to tear down the ride without utilizing any instructions whatsoever." (Def. Br., p. 35.) Although both these arguments support a comparative negligence theory, they are unpersuasive as they relate to the intended user element.

among other things, stated that they were "experienced maintenance mechanics."  (Def. Br., Exh. I, p. 7.)  Second, Plaintiffs contend that Victor Wisdom, president of Wisdom Industries, testified at his deposition that he knew some of his "users" tear down the ride by folding it into its normal folded position. (Pl. Opp., p. 11.)

The Court finds that a reasonable jury could find that the Plaintiffs are direct or reasonably foreseeable users because they are employed as maintenance workers by Morey's, a purchaser of Defendants' product, and Wisdom testified that he was aware that Morey's winterized the attraction by tearing it down each year.  Therefore, summary judgment is inappropriate and Defendants' motion will be denied.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants' motion in limine and motion for summary judgment [22] will be granted in part, denied in part and dismissed in part.  Defendants' motion in limine to argue Plaintiffs' negligence to the jury as it relates to proximate causation will be granted. Defendants' motion will be denied in all other respects, except that Defendants' motion to dismiss Plaintiffs' negligence and breach of warranty claims will be dismissed as moot.


/S/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
U.S.D.J.


Dated: November 23, 2005